```
IN THE UNITED STATES DISTRICT COURT
  FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ALAN PRUSHAN, ET AL.,            :
                                 :
        Plaintiffs,              :
                                 :   CIVIL ACTION
     v.                          :
                                 :   NO. 16-cv-5303
SELECT COMFORT RETAIL CORP.,     :
ET AL.,                          :
                                 :
        Defendants.              :
```

**MEMORANDUM**

Joyner, J.                                          May 30, 2017

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim (Doc. No. 2) and Plaintiff's Response in Opposition thereto (Doc. No. 9). For the reasons below, Defendants' Motion is granted as to Plaintiffs' fraud claim and denied in all other respects.

**I.  Facts and Procedural History[1]**

Defendants Select Comfort Retail Corp. and Select Comfort Corp. (collectively "Select Comfort") design, manufacture, advertise, distribute, and sell Sleep Number® beds. In 1993 or 1994, Plaintiffs Alan Prushan ("Mr. Prushan") and Carol Prushan

---

[1] Unless otherwise noted, the facts are taken from Plaintiffs' Complaint. ("Compl.," Doc. No. 1). In line with the standards governing Fed. R. Civ. P. 12(b)(6), all factual allegations are viewed in the light most favorable to the non-moving party. Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

1

("Ms. Prushan") purchased a Sleep Number bed directly from Select Comfort.

At some point in time unknown to Plaintiffs, Select Comfort received complaints about toxic mold growing in Sleep Number beds. Select Comfort neither recalled the beds nor provided notice to purchasers. Indeed, Plaintiffs cite in their complaint a 2004 press report in which Select Comfort's CEO stated that Select Comfort had "intentionally been selective, rather than broad, in our public communication of the issue (mold reports) because we believe it is better for the mattress industry and ourselves not to keep this topic in the headlines, causing unnecessary concern for consumers." (Compl. ¶ 16).

Plaintiffs allege that they first learned of "the toxic mold problem," (Compl. ¶ 12), in November 2014, at which time Plaintiffs inspected their Sleep Number bed and discovered that it was contaminated with toxic mold. Plaintiffs allege that, since at least 1999, Mr. Prushan suffered from severe and permanent injuries caused by his exposure to the toxic mold in his bed and that such injuries are the direct and proximate result of Select Comfort's negligence.

Invoking diversity jurisdiction, Plaintiffs filed their complaint in October 2016. Plaintiffs allege numerous violations of state law, in particular strict liability, product liability, design defect, manufacturing defect, and failure to warn (Count

I); negligent design and/or maintenance - product liability (Count II); negligence - defective manufacture - product liability (Count III); negligence - failure to warn - product liability (Count IV); loss of consortium (Count V); and fraud (Count VI).

**II. Standard**

Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a complaint if the plaintiff has failed to "state a claim on which relief can be granted." In evaluating a motion to dismiss, the court must take all well-pleaded factual allegations as true, but it is not required to blindly accept "a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Although a plaintiff is not required to plead detailed factual allegations, the complaint must include enough facts to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

**III. Analysis**

**A. Statute of Limitations**

Defendants first argue that all of Plaintiffs' claims are barred by the statute of limitations. The parties are in agreement that Pennsylvania law applies and that the statute of limitations for Plaintiffs' claims is two years. See 42 Pa. Cons. Stat. § 5524(2).

According to Defendants, the statute of limitations began to

3

accrue when Mr. Prushan's injury was first sustained in 1999 (or earlier) and therefore Plaintiffs' claims have long been time-barred. Plaintiffs respond that Pennsylvania's "discovery rule" exception tolled the statute of limitations because Plaintiffs were incapable of ascertaining the nature of Mr. Prushan's illness and its cause until they discovered the mold in their mattress in November 2014. Defendants answer that the discovery rule is inapplicable to this case. In the alternative, Defendants argue that even if the discovery rule does apply, Plaintiffs' claims would still be time-barred because the discovery rule exception would have expired in 2009 when Defendants created a website dedicated to providing information concerning mold in Sleep Number beds. (Doc. No. 2-1, at 9-10).

The statue of limitations period "generally begins to run as soon as the injury is sustained." Davis v. Wells Fargo, 824 F.3d 333, 344 n.13 (3d Cir. 2016) (citation omitted). "In general, 'lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations.'" Id. (citing Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 84-85 (1983)). "As an exception to that principle, Pennsylvania adheres to the 'discovery rule,' which can, in limited circumstances, afford plaintiffs additional time for the filing of their claims. But that rule only applies when the plaintiff is unable, 'despite the exercise of diligence, to determine the

4

injury or its cause.'" Id.

Plaintiffs allege that they did not learn of the possibility of toxic mold in their bed until November 2014, at which time Mr. Prushan checked inside his bed and discovered that it was contaminated by toxic mold. (Compl. ¶¶ 12-13). Based upon these allegations, a reasonable inference can be made that Plaintiffs did not have reason to suspect that Mr. Prushan's injuries were caused by a defect in their Sleep Number bed until they discovered the presence of mold in November 2014. See Simon v. Select Comfort Retail Corp., No. 4:14-CV-1136 JAR, 2014 WL 5849243, at *3 (E.D. Mo. Nov. 12, 2014); Graveline v. Select Comfort Retail Corp., 871 F.Supp.2d 1033, 1038 (E.D. Cal. 2012). At this stage of the litigation, therefore, Plaintiffs have alleged sufficient facts such that their claims cannot be dismissed as time-barred. See Simon, 2014 WL 5849243, at *3; Graveline, 871 F.Supp.2d at 1038.

**B. Injury and Causation**

Defendants next argue that all of Plaintiffs' claims should be dismissed for failure to plead a legally cognizable injury caused by Select Comfort's conduct. In order to have standing under Article III of the Constitution, a plaintiff must adequately plead (1) an "'injury in fact,' or an 'invasion of a legally protected interest' that is 'concrete and particularized,'" (2) a "causal connection between the injury and

5

the conduct complained of," and (3) a "likelihood 'that the injury will be redressed by a favorable decision.'" In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 633 (3d Cir. 2017) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).

Defendants argue that Plaintiffs' complaint fails to adequately plead injury-in-fact or a causal connection between that injury and Defendants' conduct, as the complaint contains only conclusory statements of injury and causation without any supporting detail. Plaintiffs maintain that their complaint satisfies Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs aver that they chose not to bolster their complaint with detail regarding Mr. Prushan's medical condition and injuries because of privacy concerns. Plaintiffs maintain that their complaint should survive the present Motion, but in the alternative they request an opportunity to file an amended complaint under seal which would plead Mr. Prushan's medical condition and injuries in detail. (Doc. No. 9, at 8).

"In the context of a motion to dismiss, . . . the injury-in-fact element is not Mount Everest." Horizon Healthcare, 846 F.3d at 633 (alterations omitted). "The contours of the injury-in-fact requirement, while not precisely defined,

6

are very generous, requiring only that claimant allege some specific, identifiable trifle of injury." Id. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Id. at 633-34.

Plaintiffs have alleged that Mr. Prushan suffered "severe and permanent injuries" caused by exposure to toxic mold that appeared in his Sleep Number bed as a result of Defendants' conduct. (Compl. ¶¶ 15, 17). These allegations, though sparse, are nonetheless sufficient to state a claim upon which relief may be granted. This is not a complaint where a plaintiff merely asserts the presence of some unknown and amorphous injury; plaintiffs have alleged *physical injuries* to Mr. Prushan's person that were caused by toxic mold. Defendants are of course entitled to learn more about Mr. Prushan's alleged injuries through discovery, but more detail at this stage is not needed.

**C. Tort Claims: Counts I, II, III, and IV**

Plaintiffs offer several theories of tort recovery, including design defect, manufacturing defect, failure to warn, and negligent maintenance. Defendants do not meaningfully distinguish between Plaintiffs' theories of liability but instead argue that any tort claims should be dismissed as a matter of law because they all stem from a purported product defect, which

7

Plaintiffs have failed to adequately plead.

The Plaintiffs' Complaint alleges that the Sleep Number bed they purchased from Defendants contained a latent defect–namely, that the bed was susceptible to toxic mold growing inside the bed. (Compl. ¶¶ 10-11). Defendants counter that the presence of mold does not constitute a defect in design or manufacture; rather, Defendants say, mold is a naturally occurring organism that will grow virtually anywhere under the right conditions.[2] (Doc. No. 2-1, at 12-14). Viewing the allegations in a light most favorable to Plaintiffs, we find that Plaintiffs have adequately alleged that the Sleep Number bed was manufactured or designed in such a manner that it was particularly amenable to mold growth. We also find that, regardless of any design or manufacturing flaws, Plaintiffs have adequately stated a claim that Defendants did not adequately warn Plaintiffs of the possibility of mold growth or about any maintenance that would have been required to avert mold growth.

---

[2] Defendants invite the Court to take judicial notice of two environmental studies as well as a public statement made before a United States House of Representatives subcommittee regarding the properties of mold and mold growth. (Doc. No. 2-1, at 13 nn. 5 & 6). Plaintiffs do not dispute the truth of the facts in question and they have not objected to Defendants' request that we take judicial notice of these documents. The Court accordingly takes judicial notice of the requested documents and finds that mold is a naturally occurring organism that will grow virtually anywhere when the right conditions are present. See Fed. R. Evid. 201; Kramer v. City of Jersey City, 455 F. App'x 204, 207 (3d Cir. 2011) (holding that district court did not err by taking judicial notice of the relationship between high steroid levels and aggressive behavior on a motion to dismiss).

8

**D. Loss of Consortium Claim: Count V**

Defendants argue that Ms. Prushan's loss of consortium claim fails for two reasons. First, the claim must fail because the loss of consortium claim is derivative of Mr. Prushan's tort claims and thus cannot survive if those claims are dismissed. We have already held that Mr. Prushan's tort claims may proceed to discovery, and so Defendants' first argument against the loss of consortium claim necessarily fails.

Second, Defendants argue that Plaintiffs have failed to plead facts demonstrating a sufficient impairment of the marital relationship. For the reasons discussed above with regard to injury and causation, see Section III.B, supra, we disagree. Plaintiffs have alleged that Mr. Prushan suffered severe and permanent physical injuries as the result of exposure to toxic mold. (Compl. ¶¶ 15, 17). They have also alleged that Ms. Prushan has suffered the loss of Mr. Prushan's companionship, services, society, and ability, and that the Plaintiffs' marital association has been altered and impaired. (Compl. ¶ 48). At this stage of the litigation, these allegations are sufficient to state a claim for loss of consortium.

**E. Fraud Claim: Count VI**

Finally, Defendants argue that Plaintiffs' fraud claim should be dismissed for failure to comport with the heightened

9

pleading requirements of Fed. R. Civ. P. 9(b).[3] Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). At a minimum, plaintiffs should be able to name the "who, what, when, where and how" of the fraud. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1422 (3d Cir. 1997) (internal quotation omitted). Rule 9(b) gives defendants "notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." Id. at 1418. Courts have noted, however, that Rule 9(b) should be applied "with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (abrogation on other grounds recognized by Forbes v. Eagleson, 228 F.3d 471, 483-84 (3d Cir. 2000)).

Plaintiffs' theory of fraud is not entirely clear from its

---

[3] To recover for fraud under Pennsylvania law, a plaintiff must prove the following elements: "'(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.'" W. Chester Univ. Found. v. MetLife Ins. Co. of Connecticut, No. CV 15-3627, 2017 WL 1355005, at *3 (E.D. Pa. Apr. 13, 2017) (citing Gibbs v. Ernst, 538 Pa. 193, 207 (1994)).

10

Complaint, which at times seems to suggest that Defendants committed fraud by failing to recall Plaintiffs' bed. (Compl. ¶¶ 51-54). We agree with Defendants that such a failure to recall could not be the basis for a fraud claim, and Plaintiffs appear to have abandoned that theory. In their opposition Plaintiffs clarify that they believe Defendants knew about and concealed the alleged mold problem at the time Plaintiffs made their purchase in 1993 or 1994 and that Plaintiffs justifiably relied on Defendants' misrepresentations as to safety and concealment of material facts at the time of purchase. (Doc. No. 9, at 12).

We find that Plaintiff's Complaint fails to plead facts supporting their fraud claim with the requisite specificity required under Rule 9(b). The Complaint does not allege any detail regarding Defendants' purported misrepresentations as to safety or who, exactly, made those misrepresentations on Defendants' behalf. Such generalized pleading is insufficient to state a fraud claim. See State Farm Mut. Auto. Ins. Co. v. Stavropolskiy, No. 15-CV-5929, 2016 WL 627257, at *3 (E.D. Pa. Feb. 17, 2016); Kester v. Zimmer Holdings, Inc., No. 2:10-CV-00523, 2010 WL 4103553, at *3 (W.D. Pa. Oct. 18, 2010).

**IV. Conclusion**

For the foregoing reasons, Defendants' Motion is granted as to Plaintiffs' fraud claim and denied in all other respects. Plaintiffs' claim for fraud is hereby dismissed without

prejudice.  An appropriate Order follows.